FILED
99 JAN 12 PM 2: 31
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALECIA DEAN,                    }
                                }
    Plaintiff,              }
                                }
v.                              }   CASE NO. CV 96-B-2287-S
                                }
UNITED PARCEL SERVICE,          }
                                }
    Defendant.              }
                                }
                                }

ENTERED
JAN 1 2 1999

## MEMORANDUM OPINION

In this lawsuit, plaintiff Alecia Dean ("Dean" or "plaintiff") brings claims against defendant pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981, alleging that defendant discriminated against her on the basis of her race. Currently before the court is the motion of the defendant, United Parcel Service ("UPS" or "defendant") for summary judgment. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

## FACTUAL SUMMARY

Plaintiff Alecia Dean, who is African-American, worked for United Parcel Service from September, 1985 until she was terminated on June 8, 1995. (Def.'s Ex. 1 at 164; Def.'s Ex. 9 ¶ 7.)[1] At the time of her discharge, Dean was a Customer Service Representative.

---

[1] Defendant has submitted evidence marked as Exhibits 1-9. Plaintiff has submitted evidence marked as Exhibits 1-6. For the purposes of this memorandum opinion, such evidence will be referred to as either "Def.'s Ex." or "Pl.'s Ex.," followed by the applicable Exhibit number,

(Def.'s Ex. 1 at 44.) Dean's immediate supervisors were Claudine Catalano and John Elkins. (Def.'s Ex.1 at 47; Def.'s Ex. 2 at 9.)

On June 5, 1995, an altercation occurred between Dean and her co-worker Brenda Pierce, a white female. This altercation and defendant's actions following the altercation form the factual basis of plaintiff's complaint. However, there is a direct conflict in the evidence as to what actually occurred between Dean and Pierce on June 5, 1995.

Dean claims that on June 5, 1995, shortly after 1:00 p.m., as she was leaving the UPS building, she stopped to talk to a co-employee, Brenda Ferrell. Dean states that she was leaning over Ferrell's desk when Brenda Pierce walked by and bumped into her, causing her to fall "into the file cabinet." (Pl.'s Ex. 1 at 29-30.)

Dean states that after she caught her balance, she went over to Pierce's desk and asked Pierce, "why did you push me[?]" (Pl.'s Ex. 1 at 30.) Pierce allegedly replied, "you should not have had that damn pocketbook in my way." (*Id.*) Dean states that she then threatened to tell Pierce's supervisor about the incident and press charges against Pierce. (*Id.*) Dean claims that Pierce's response to her threat was to flip over a little plastic basket on her desk and yell "help," as if Dean had hit her with the basket. (Pl.'s Ex. 1 at 30-31.)

Dean states that following the incident, she told Brenda Ferrell that she was going to try and find a supervisor to report what had happened. (Pl.'s Ex. 1 at 108-110.) Dean claims that she looked for a supervisor but could not find one. She further claims that on her way out of the office, she may have reported the incident to one of the employees in the personnel

---

page number, and/or paragraph number.

office. (Pl.'s Ex. 1 at 107-108, 112-115.) Dean then left the office because she had a doctor's appointment.

Brenda Pierce and other UPS employees describe the incident in question differently. Pierce claims that she walked past Dean without incident. (Def.'s Ex. 7 at 14.) Pierce then claims that Dean approached her at her desk and accused her of bumping into her without apologizing. (Def.'s Ex. 7 at 15; Def.'s Ex. 9 ¶ 2.) Pierce states that when she denied bumping Dean, Dean cursed at her and picked up Pierce's mail basket and hit her in the face with it. (*Id.*) Pierce immediately reported the incident to John Songer, a UPS supervisor. (Def.'s Ex. 7 at 35-37.)

Dean's immediate supervisor was Claudine Catalano. (Def.'s Ex. 2 at 9.) Catalano testified that she spoke to Dean shortly after the incident occurred. (Def.'s Ex. 2 at 25.) Catalano states that Dean told her, "I just bumped into Brenda and threw the basket at her." (Def.'s Ex. 2 at 26.) Catalano further states that when she questioned Pierce about the incident, Pierce said, "Alecia threw a basket at me." (Def.'s Ex. 2 at 27.) Catalano states that Consetta McWeay, a witness to the incident, confirmed Pierce's story. (*Id.*; *see also* Def.'s Ex. 6.)

Catalano states that she then asked Pierce to follow her to John Elkins's office. (Def.'s Ex. 2 at 28.) John Elkins was the manager of the Customer Support Department where both Pierce and Dean worked. (Def.'s Ex. 4 at 7-8.) Pierce relayed to Elkins and Catalano her version of the alleged assault and denied having bumped Dean. (Def.'s Ex. 2 at 28; Def.'s Ex. 7 at 69.) Pierce then left Elkins's office, but returned about twenty minutes later complaining of neck pains. (Def.'s Ex. 2 at 29.) Catalano took Pierce to a medical clinic,

3

where Pierce was diagnosed with neck strain. (*Id.*; Def.'s Ex. 7 at 39-43.) Pierce alleges that she sprained her neck when she jerked her head away in an attempt to avoid being hit in the face by the mail basket. (Def.'s Ex. 7 at 31-32.)

An investigation of the alleged "bumping" and "basket-throwing" incidents ensued. On Tuesday, June 6, 1995, the day after the incident occurred, Pierce met with Catalano and Elkins and presented them with a written statement outlining her allegations against Dean. (Def.'s Ex. 7 at 81-84.) Elkins then contacted Dean by telephone and requested that Dean come into the office to talk about the incident. (Def.'s Ex. 4 at 24-25.) Dean replied that she was unable to come into the office at that time because of medical problems, but that she would call Elkins back. (Pl.'s Ex. 1 at 34-35, 118-20, 130-31.)

On June 6, 1995, Elkins and Catalano also began interviewing employees who might have witnessed the incident. Elkins and Catalano conducted these interviews pursuant to instructions from Stephanie Dobbs, UPS's Human Resources Manager. (Def.'s Ex. 9 ¶ 4.) Except for Consetta McWeay and Brenda Ferrell, most employees reported that they did not see anything related to the incident. (Def.'s Ex. 9 ¶ 4.) Consetta McWeay produced a statement attesting that she witnessed the incident. (Def.'s Ex. 9 at ex. 1.) McWeay's statement relates that: "all I could see was Alecia all in Brenda's face being extremely ugly to her . . . . The next thing I saw was Alecia throw the sort basket and hit Brenda with it." (*Id.*) Brenda Ferrell told John Elkins on June 8, 1995, that she had witnessed Pierce bump or touch Dean as she walked past. (Def.'s Ex. 9 ¶ 6, ex. 2.) However, in her deposition, Ferrell states that she did not see Pierce touch Dean, but that Dean "lunged" over her desk when Pierce walked by. (Def.'s Ex. 5 at 68.) Ferrell's June 9, 1995, written statement merely

4

states that Pierce "did make physical contact with Alecia Dean." (Def.'s Ex. 5 at ex. 3.)

On Wednesday, June 7, 1995, Elkins called Dean and asked when she could come into the office and talk to him. (Pl.'s Ex. 1 at 144.) Dean explained that she was "out of it" from pain pills, but that she planned to come in by the end of the week. (Pl.'s Ex. 1 at 144-145.) During this conversation, Dean also told Elkins that she had gone to the doctor the previous day because Pierce had pushed her. (Def.'s Ex. 4 at 25.)

Dean returned to UPS on the afternoon of June 8, 1995. Dean claims that she went to the personnel department and asked to speak to John Elkins, but that she was told not to go to Elkins' office. (Pl.'s Ex. 1 at 152-53, 202-03.) Dean then spoke to Joe Rivera, UPS's District Human Resources Manager, who told Dean that she had been terminated. (Pl.'s Ex. 1 at 220, 223-24.) Dean states that she complained to Rivera because she had not had the chance to tell her side of the story, but Rivera replied that he had "heard enough." (Pl's Ex. 1 at 227, 230.)

Joe Rivera made the decision to terminate Dean. (Pl.'s Ex. 6 at 9-10; Pl.'s Ex. 4 at 60.) Rivera has testified that UPS policy requires that employees that initiate aggressiveness are terminated. (Pl.'s Ex. 6 at 23.) Rivera states that the decision to terminate Dean was in keeping with this policy and was based on conversations he had with both Dean and Pierce. (Pl.'s Ex. 6 at 10, 23-26.) Because Ferrell and the other witnesses failed to corroborate Dean's allegations against Pierce, Dobbs and Elkins decided that there was an insufficient basis to discipline Pierce.

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED.R.CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts

are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

### I. Plaintiff's Title VII Claim

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ." 42 U.S.C. § 2000e-2(a)(1). As an employer of fifteen or more employees, UPS is an employer that is subject to liability under Title VII. 42 U.S.C. § 2000e(b).

Plaintiff alleges that defendant discriminated against her on the basis of her race when it terminated her as a result of the incident involving Brenda Pierce. (Compl. ¶ 7.) Plaintiff further alleges that defendant discriminated against African-American employees in "promotion, discipline, discharge and other terms, conditions and privileges of employment." (Compl. ¶ 7.)[2] However, because plaintiff has failed to establish that defendant's adverse employment actions were motivated by race, defendant's motion for summary judgment as to all plaintiff's Title VII claims is due to be granted.

In the present case, plaintiff can establish a prima facie case of discriminatory application of disciplinary rules if she can show: (1) that she was a member of a protected class, (2) that she

---

[2] Plaintiff's complaint contains two consecutive paragraphs marked as paragraph seven. (*See* Compl. at 2-3.)

7

was qualified for her position, and (3) that she was discharged for misconduct nearly identical to that engaged in by one outside of the protected class whom the employer retained. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).

Drawing all reasonable inferences in favor of the plaintiff, the court finds that plaintiff failed to establish a prima facie case. Although plaintiff satisfies element (1) and (2) above, she has not presented sufficient probative evidence on which a reasonable jury could conclude that a white employee who engaged in nearly identical conduct was not terminated.

UPS policy requires that any employee who commits an act of physical violence against another employee is automatically terminated. Both Brenda Pierce and Consetta McWeay testify that they saw Dean hit Pierce in the face with a mail basket. Claudine Catalano has testified that, immediately after the incident allegedly occurred, Dean stated that she had thrown a basket at Pierce. These three witness's allegations constitute sufficient evidence for UPS management to reasonably conclude that Dean engaged in an act of violence against Pierce. Unlike Pierce's allegations against Dean, UPS was unable to substantiate Dean's allegations against Pierce. The only witness other than Dean and Pierce on this point was Ferrell, who stated only that Pierce may have touched Dean. Ferrell never reported an intentional push or shove by Pierce. There is therefore insufficient evidence on which a reasonable jury could conclude that UPS retained a white employee who engaged in nearly identical conduct. When an employer "applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown." *Nix v. WLCY Radio*, 738 F.20 at 1186.

Plaintiff also argues that she established a prima facie case because she did not violate defendant's rule against violence in the work place. Even if plaintiff established a prima facie

8

case, defendant is still due summary judgment because it has articulated a legitimate reason for discharging plaintiff, that is, that plaintiff violated defendant's policy prohibiting work place violence by verbally and physically assaulting one of her co-workers. Plaintiff has not put forth sufficient evidence of pretext to entitle her case to go to a jury. Even if defendant was wrong in its decision, plaintiff has not put forth sufficient evidence on which a reasonable jury could conclude that defendant's stated reasons were a pretext for illegal race discrimination.

Plaintiff alleges that UPS also discriminated against her in violation of Title VII when defendant applied disciplinary rules, assigned tasks, and granted promotions. (*See* Pl.'s Br. in Opp'n at 6; Pl.'s Ex. 1 at 191-202, 293-98, 303-06.) However, plaintiff's allegations are merely conclusory and are not supported by the evidence. A plaintiff must come forth with significantly probative evidence to support her claims, and cannot prevent judgment by merely resting on the conclusory allegations of her pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986). Dean's allegations, without more, are not sufficient evidence to allow a reasonable jury to conclude that UPS discriminated against her on the basis of her race in application of disciplinary rules, assignment of tasks, and allocation of promotions.

## II. Plaintiff's § 1981 Claim

Section 1981 prohibits race discrimination in the making and enforcement of contracts. 42 U.S.C. § 1981(a). A plaintiff must prove intentional discrimination to prevail under Section 1981. *Patterson v. McClean Credit Union*, 491 U.S. 164, 186 (1989); *General Building Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982). The Supreme Court has held that the standards for testing disparate treatment under Title VII fully apply to Section 1981 claims. *Patterson*, 491 U.S. at 186-188 (approving application of the *McDonnell-*

*Douglas/Burdine* approach to §1981 cases); *accord Brown v. American Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir. 1991). The court's previous analysis of plaintiff's Title VII claims are therefore dispositive of plaintiff's Section 1981 claims of discriminatory discipline, promotion, and discharge. Accordingly, defendant's motion for summary judgment with respect to plaintiff's Section 1981 claims of racial discrimination is due to be granted.

## CONCLUSION

Plaintiff has failed to establish that defendant's reason for terminating her was a pretext for racial discrimination. Therefore, defendant's motion for summary judgment as to plaintiff's Title VII and Section 1981 claims is due to be granted. An order in accordance with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 12th day of January, 1999.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge